**2017 BNH 012**    Note:   This is an unreported opinion. Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                  Bk. No. 16-11149-JMD
                                                                                                          Chapter 7

Edward Charles Furlong, III,
        Debtor

*Patrick Michael Carron, Esq.*  
*Concord, NH*  
*Attorney for the Debtor*

*Richard K. McPartlin, Esq.*  
*Ford & McPartlin, P.A.*  
*Portsmouth, NH*  
*Attorney for the Michael S. Askenaizer,*  
*Chapter 7 Trustee*

*Christopher T. Hilson, Esq.*  
*Donahue, Tucker & Ciandella, PLLC*  
*Exeter, NH*  
*Attorney for the Town of Bartlett*

## MEMORANDUM OPINION

### I. INTRODUCTION

The matters before the Court are the "Trustee's Objection to Debtor's Claim of Exemption Pursuant to 11 U.S.C. § 522(b)"[1] filed Michael S. Askenaizer (the "Trustee"), Chapter 7 trustee of the estate of Edward Charles Furlong, III, the "Objection of the Town of Bartlett to Debtor's Claim of Homestead Exemption Pursuant to N.H. RSA 480:1"[2] (collectively with the Trustee's objection, the "Objections") filed by the Town of Bartlett (the "Town"), and the response[3] filed by Edward

---

[1] Doc. No. 47.

[2] Doc. No. 48.

[3] Doc. No. 52.

Charles Furlong, III (the "Debtor").  The Trustee and the Town each object to the Debtor's claim of a homestead exemption in certain real estate in Bartlett, New Hampshire on the basis that he does not occupy the property, or alternatively, that it is partially commercial.  The Court conducted an evidentiary hearing on August 17, 2017, at which four witnesses testified—the Trustee, the Debtor, Sargent Jamie Sheehy of the Town of Bartlett Police Department, and Lynn Jones, an administrative aid to the Town of Bartlett Selectboard—and thirty-two exhibits were introduced into evidence.  For the reasons set forth below, the Court will sustain the Objections in part.

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2).

## III. FACTS

The Debtor filed a voluntary Chapter 7 petition on August 12, 2016.  On Schedule A/B: Property, the Debtor listed two adjacent properties on U.S. Route 302 in Bartlett, New Hampshire: 1455 U.S. Route 302 (the "1455 Property") and 1467 U.S. Route 302 (the "1467 Property").  The 1455 Property is listed as having a current value of $250,000.00, and is unencumbered by any liens.  The 1467 Property is listed as having a current value of $275,000.00, and is encumbered by a mortgage.  On Amended Schedule C: The Property You Claim as Exempt, the Debtor claimed an exemption in the 1455 Property up to the statutory limit under N.H. RSA § 480:1.[4]

---

[4] Doc. No. 63.

The Debtor acquired the 1455 Property on March 6, 2003.[5] The 1455 Property is improved by an inn building consisting of three suites of approximately equal size, four cabins ranging in size between 224 square feet and 494 square feet, a shop building, and two screen houses.[6] The 1455 Property once contained a single family home, but it was destroyed by fire on April 6, 2012, and has not been rebuilt.[7] Throughout the years, the Debtor, either individually or through wholly owned entities, operated a bed and breakfast, inn, and cabin rental business on the 1455 Property until October 23, 2015.[8] The 1455 Property also housed the operations of the Debtor's solely owned snowmobile business.[9] Additionally, the Debtor stores the inventory of his summer jet-ski rental business at the 1455 Property during the offseason.[10]

The Debtor acquired the 1467 Property on April 28, 2006.[11] The 1467 Property is improved by a two story single family home with a garage, two sheds, and a lean-to.[12] At trial, the Debtor testified that the 1467 Property is a rental property leased through his solely owned company, Starbrite Leasing, Inc., though it has not had a tenant since 2015. He also testified that he uses the basement of the 1467 Property for storage.

There is no dispute that before the fire, the Debtor resided in the single family home on the 1455 Property.[13] Once the home was destroyed, the Debtor moved to the 1467 Property while waiting to rebuild. During this time, his insurance company paid Starbrite Leasing, Inc. rent for

---

[5] Doc. No. 62 at ¶ II.3.
[6] Id. at ¶¶ II.7-8.
[7] Id. at ¶ II.20.
[8] Id. at ¶ II.12.
[9] Id. at ¶¶ II.13-14.
[10] Id.
[11] Id. at ¶ II.33.
[12] Id. at ¶ II.38.
[13] Id. at ¶ II.20.

approximately three months.  When the insurance company ceased paying rent for the 1467 Property, the Debtor testified that he moved to a cabin on the 1455 Property ("Cabin No. 3").  The insurance proceeds were ultimately used to satisfy the mortgage on the 1455 Property and on litigation with the Town regarding one of his businesses.

The Debtor's unrebutted testimony is that he lived in Cabin No. 3 on the 1455 Property until at least the fall of 2015.  On October 23, 2015, water service to the 1455 Property was shut down by the Town for nonpayment.[14]  Since that date, water service has never been restored.[15]  The 1467 Property, however, continues to have water service from the Town.[16]  The Debtor testified that he initially ran a hose from the 1467 Property to Cabin No. 3 as a work around for the shower and toilet, but that lasted only a few weeks before the hose began to freeze.  Once this occurred, the Debtor went to Florida to live with his parents for the winter.

The Debtor testified that he returned from Florida in late April or early May, 2016.  At this time, he lived in Cabin No. 3 and began readying his summer jet-ski rental business which he operates on Sebago Lake in Naples, Maine.  The Debtor began making regular trips to Maine in June, 2016, before ultimately taking temporary residence there in July, 2016.  He returned to Cabin No. 3 at the end of the season in September, 2016.  At trial, the Debtor testified that, due to the seasonal nature of the business, he has continued to alternate between Cabin No. 3, Florida, and Maine in the same manner since the petition date.  He maintains that he has never lived at the 1467 Property, and has only occasionally spent a night there, most notably when court appearances have required him to return to Bartlett during the winter.  The Debtor concedes that he showers at the

---

[14] Id. at ¶ II.21.

[15] Id. at ¶ II.22.

[16] Id. at ¶¶ II.39-40.

1467 Property, but otherwise uses three five gallon jugs and a hose to supply water to Cabin No. 3.

Notwithstanding the Debtor's insistence that he lives at the 1455 Property, he has at times made representations to the contrary. For example, the Debtor listed the 1467 Property in response to question five "Where you live," on his bankruptcy petition.[17] His vehicle registration also lists the 1467 Property as his legal address.[18] At a deposition held on July 14, 2016, the Debtor testified that he was currently living at the 1467 Property and referred to it as his "house," but also testified that he "bounce[s] back and forth."[19] At the meeting of creditors held on September 6, 2016, he similarly explained that he "bounces around," but testified that he only used the 1467 Property for showers.[20]

At trial, Sargent Sheehy testified that she regularly patrols U.S. Route 302 and passes the Debtor's properties multiple times a day. Although she does not focus any "extra observational effort" on the Debtor or his properties, she testified that she could not recall ever seeing the Debtor's personal vehicles at the 1455 Property. The Court notes, however, that based on the diagrams and photographs of the 1455 Property in evidence, the inn structure blocks the view of Cabin No. 3 from U.S. Route 302, as well as the likely location of any vehicle used to access the cabin.[21] Lynn Jones, the administrative assistant to the Town Selectboard, testified that the Debtor has not sought any of the permits or approvals necessary to rebuild the destroyed house on the 1455 Property. The Debtor admits that he lacks the present capacity to rebuild.

---

[17] Ex. 1.

[18] Ex. 203.

[19] Ex 3 at 16:12-17; 23:12-23; 216:10-20.

[20] Ex. 2 at 35-37.

[21] See Exs. 4-5.

Although there is no dispute that the Debtor's use of the 1455 Property has historically had a commercial component, he asserts that no commercial operations have occurred since October, 2015. Due to the lack of water service to the 1455 Property, the Debtor has been unable to obtain renters. Additionally, the Debtor testified that his snowmobile rental business ceased operations in the winter of 2015 once he lost access to certain trails adjacent to the 1455 Property, which in turn adversely affected the rental business with respect to both the 1455 Property and the 1467 Property. This is in part why the Debtor now travels to Florida in the winter. Nevertheless, the Debtor continues to store his jet-ski inventory at the 1455 Property, and runs his office out of the inn building. He also testified that he hopes to one day build a residential treatment center for recovering alcoholics at the 1455 Property. The parties have stipulated that if the Court were to find the 1455 Property continues to have a non-residential use component, the Debtor's residential occupation of the 1455 Property constitutes no more than 16.2% of the habitable structures.[22]

**IV. DISCUSSION**

In New Hampshire, "[e]very person is entitled to $120,000 worth of his or her homestead, or of his or her interest therein, as a homestead." N.H. RSA § 480:1. "The homestead right was created by the legislature as a matter of public policy and is to be construed liberally." In re Mirulla, 163 B.R. 910, 911 (Bankr. D.N.H. 1994) (citing Currier v. Woodward, 62 N.H. 63, 66 (1882)). For purposes of the statute, "'Homestead' means home place, or place of the home." Austin v. Stanley, 46 N.H. 51, 52 (1865). "The statute was specifically intended to secure to debtors and their families, the shelter of the homestead roof; not to exempt mere investments in real estate, or the rents and profits derived therefrom." Id. Thus, the statute has been construed to

---

[22] Doc. No. 62 at ¶ II.11.

"exclude from the exemption that portion of a building or parcel not actually utilized by a debtor or his family as a residence . . . and those portions which are utilized to generate rental income from third parties." In re Myers, 323 B.R. 11, 13 (Bankr. D.N.H. 2005) (citing Cole v. Laconia Savings Bank, 59 N.H. 53, 54 (1879), Kilburn v. Filby (In re Filby), 225 B.R. 532, 536 (Bankr. D.N.H. 1998), In re Tsoupas, 250 B.R. 466, 468 (Bankr. D.N.H. 2000), and In re Mirulla, 163 B.R. at 912); see also In re Evarts, No. BK NO. 05-12681 JMD, 2006 WL 2077361, at *3 (Bankr. D.N.H. June 30, 2006) ("In general, the homestead right does not apply to investment property, property occupied by tenants, or other property where the owner, or his family, does not dwell.").

"A homestead right is established by actual physical possession of a property with an intent to occupy it as a home." In re Evarts, 2006 WL 2077361, at *2 (citing Currier, 62 N.H. at 64). Indeed, the New Hampshire Supreme Court has explained that:

> [O]ccupancy is essential to the existence of the homestead right, and for the purpose of its creation or inception the occupancy must be actual. . . . The statute exempts only a homestead, in fact, the place of the home. It does not undertake to exempt a contemplated future homestead, and therefore the mere intention to occupy the premises at some future time as a home, without actual occupancy, is insufficient to impress upon them the homestead character.

Currier, 62 N.H. at 65. The Supreme Court also held that "when the premises have become invested with the homestead character, and a homestead has been once acquired, a constructive occupancy may be sufficient to retain it, and it will not be lost by a temporary absence with no intention of abandonment." Id.; see In re Eckols, 63 B.R. 523, 527 (Bankr. D.N.H. 1986) (concluding that "the New Hampshire courts would likewise honor the homestead exemption claim of a spouse involuntarily separated from occupancy of the homestead property during a pending divorce proceeding.").

Exemptions in bankruptcy are determined as of the petition date. 11 U.S.C. § 522(b)(3)(A). The burden is on the objecting party to prove the homestead is not properly claimed.

Fed. R. Bankr. P. 4003(c); see also Shamban v. Perry (In re Perry), 357 B.R. 175, 178 (B.A.P. 1st Cir. 2006).  If the objector introduces evidence effectively challenging the exemption, the burden shifts to the debtor to produce evidence in support of his claim. In re Toppi, 378 B.R. 9, 11 (Bankr. D. Me. 2007), as amended (Nov. 15, 2007).

In the present case, it is undisputed that the Debtor's occupation of the house on the 1455 Property prior to its destruction in a fire was sufficient to establish homestead rights there.  Thus, the question is whether any intervening event has caused him to lose those rights.  The Debtor's unrebutted testimony was that, with the exception of three months immediately following the fire, he has occupied Cabin No. 3 on the 1455 Property as his home continuously.  While the 1455 Property lacks water service and the 1467 Property does not, the Debtor has credibly testified this is not an impediment to his occupation of the 1455 Property outside of the winter season.  Moreover, the Court finds that the Debtor's seasonal trips to Florida and Maine for months at a time are not undertaken with the intent to abandon his homestead, but are temporary absences for pleasure (Florida) or work (Maine).  Similarly, the record reflects that the Debtor's occasional use of the 1467 Property does not rise to the level of establishing a new homestead on that property.  On the record before the Court, the temporary absences from the 1455 Property do not constitute an abandonment of the homestead rights acquired by the Debtor prior to the 2012 fire.  The Debtor's temporary occupancy of the 1467 Property and locations in Maine and Florida do not show an intent to establish a new homestead at any of those locations.

Having concluded that the Debtor has homestead rights in the 1455 Property, the Court must consider the extent of those rights.  The record is clear that the 1455 Property has a long history of commercial and residential use.  There is no evidence that the Debtor has completely abandoned commercial use of that property.  Although his snowmobile business is defunct, and

the rental properties have been vacant for some time, the Debtor's testimony is that he continues to run his jet-ski business operations from the 1455 Property, and hopes one day to convert it into a residential treatment center for recovering alcoholics—an unquestionably commercial endeavor. As such, the Court finds that substantial commercial activity continues to occur on the 1455 Property, rendering that portion excluded from the exemption statute.

Prior to the commencement of the evidentiary hearing the parties stipulated that the Debtor's use of the 1455 Property as a homestead was never more than 16.2% of the total square footage of the structures on the property. Accordingly, pursuant to the parties' stipulation, the Debtor is entitled to an exemption in 16.2% of the 1455 Property.

**V. CONCLUSION**

For the reasons set forth above, the Objections are sustained in part and overruled in part. The Debtor is entitled to a homestead exemption in 16.2% of his interest in the 1455 Property. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Dated: September 8, 2017 /s/ J. Michael Deasy
J. Michael Deasy
Bankruptcy Judge